You may be seated. The clerk will call the next case. Case number 317-0763, the people of the state of Illinois at O'Neill by Justin Nicolosi v. Portia Prokesh, appellant by James Wozniak. Mr. Wozniak, you may proceed. Good morning, your honors. Good morning. May it please the court, counsel. My name is James Wozniak with the State Appellate Defender's Office and I represent the appellant in this matter, Portia Prokesh. Your honors, the state failed to prove Portia Prokesh guilty beyond a reasonable doubt. That's not to say that the admittedly very bad facts of this case show that Portia did not commit a crime, but the state failed to prove her guilty of the one crime that it charged based on the one act that it attempted to prove, aggravated criminal sexual assault. Now, we raised five issues in our brief, and today in oral argument I'm going to concentrate on the first two, which is the state failed to prove Portia guilty beyond a reasonable doubt of aggravated criminal sexual assault, and that also error occurred when the jury was not specifically instructed that it needed to find Portia was 16 when the charged conduct occurred. If time permits, I'll move on to the Batson issue. I, of course, will take questions on any of the five issues at any time raised in the brief. The state charged Portia with one offense, aggravated criminal sexual assault, and the charging instrument alleged that this act of sexual penetration occurred at some time in 2016. The entire year was given in the charging document. Pursuant to the statutory language, the instructions that were given to the jury alleged that the victim was under nine years of age, as the charging document also said, and that Portia was under 17, but more than 16 when the act occurred. That's what the charging document specifically stated. And Portia turned 17 on October 22nd of 2016. So within that calendar year that the state placed in its charging document, Portia turned from age 16 to 17. It's not clear in the record why the state decided to only charge one offense in this case when there was facts to demonstrate a trial that multiple acts that had occurred over many years. But I think that the court can assume that a possible reason that the state chose one charge is the interplay between the criminal laws and the juvenile court act in this case. Since Portia was under 18 when all of the alleged acts occurred, she would have needed to be charged or adjudicated in juvenile court first. However, aggravated criminal sexual assault, if the person is age at least 16, is one of the charges that automatically moves into what we'll call, I guess for the sake of argument here, adult court, or the court that is subject to the criminal laws. The state could have charged Portia after she turned 17 with predatory criminal sexual assault of a child. However, based on the code, that charge would have needed to begin in juvenile court. So the state chose one charge and one charge only. The other acts that came out at trial all appear to be at times when Portia was under 16. All of those acts, if charged again, would have had to begin in the juvenile court. Some of those acts could have never come out of juvenile court because they were acts when she was as young as 11 or 12. And under the juvenile court act, any child under the age of 13 can never be charged under the criminal laws of the state. Now, the state argued that the charge conduct involved at trial the last time a sexual act occurred between CP, the victim, and Portia. The state's evidence was that CP's testimony said that the act occurred when he was in the middle of the school year, I believe the third grade he said he was in. On cross-examination, he agreed with Portia's counsel that the middle of that school year was December of 2016 or January of 2017, which are both months after Portia would have turned 17. The state also played in their case-in-chief the recorded statement of Portia to police, where she admitted to the last sex act that the state was trying to prove. And that again occurred, in her words, during Christmas break of 2016-17, again after she turned age 17. Now, the state's only argument here on appeal, the support that Portia was proven guilty on a reasonable doubt, was that CP said that when the last act occurred, it was hot outside. First, I think that singular term of hot cannot be enough for proof beyond a reasonable doubt. And especially given the other evidence in the case, Portia's statement to police, CP's testimony, and cross-examination testimony. Second, as we've argued and brought in the reply brief, it was unseasonably warm during December and January in Peoria in 2016-17, especially around the Christmas break. I believe that the Christmas day and the day after Christmas, there was multiple days of over 50 degrees. There was a day that reached 60 degrees. That could be subjectively hot. I think it could be definitely subjectively hot to a younger child. The state chose to charge this case how it saw fit. And its decision has led to its failure to prove that one charge and one act guilty, prove Portia guilty beyond a reasonable doubt. However, during the trial, the state presented evidence of other acts of sexual penetration that occurred when Portia was under the age of 16 and CP was under the age of 9. Which aggravated criminal sexual assault, the way the statute reads, would still be aggravated criminal sexual assault regardless of what age Portia was under 16. But if the state would have charged it that way, they would have had to begin in juvenile court and attempted to move it to the court where the criminal laws could be heard, or adult court, or possibly it would have to remain in juvenile court if, again, the alleged acts were as when she was as young as 11 and 12. And that rolls into the second issue where there was an interplay. What we had asked under the first issue is that the court find that what the state was trying to prove was one act, that last act, based on the charging document, based on the statements of the prosecutor, and they failed to prove it beyond a reasonable doubt because they failed in an essential element to prove that Portia was under the age of 17 when that last act occurred. She was 17, thus they failed in proving her guilty of aggravated criminal sexual assault. However, based on the other things that they, the acts that they brought in, that's what I think gave rise to the jury to be specifically instructed, as the charge dictated, that Portia was exactly 16 when the charge, or when the alleged act occurred. Because if she was under 16, she wouldn't be sitting at that point in time in adult court with that jury hearing her guilt, and even if they could, the penalties she faces under the criminal laws are much higher than what she's going to face in juvenile court. There was no instruction given. I think that it's, there was, this issue wasn't specifically preserved, the instruction issue, but this court can reach it both under second prong claim error and under an ineffective assistance of counsel claim. The remedy that we're asking for in the instruction issue is a unique way to, I think, get about, because had she started in juvenile court, she would have been subjected to, and stayed in juvenile court, she would have been subjected to juvenile court sentencing. So this court rejects the first argument, the second, but agrees with the second argument. We'd ask that, because she would still be guilty of criminal sexual assault, because any age under 16, the way the statute is written, apparently any minor of any age could be charged if the victim is under 9. So what we would ask is that the court, since this is an apprendee in a sentencing instruction issue, to vacate her sentence, remand to the juvenile court proceeding so that she is sentenced in juvenile court, if this court rejects the first argument, it doesn't reverse her conviction outright. If she achieves the age of 21, the juvenile court no longer has jurisdiction of her by the time this court renders its decision, then we'd ask that her conviction be reversed outright and the juvenile proceedings be dismissed. She will turn 21 in October of this year. Before I move on to the Batson issue, Your Honors, is there any questions specifically about these first two issues? During jury selection, the state used four correctory challenges to remove four jurors. Two of those four jurors removed were African American. The record is clear on several facts. Portia is of Caucasian and African American descent. The two African Americans that were removed from the jury represented the three African Americans that had made it into the veneer. The prosecutor asked of the four jurors that were removed, what the record is not exactly clear on is of which specific four jurors were removed, which ones of those four jurors were the African American jurors, which name corresponded with their race. However, the record is clear that the two of the four that were removed were African American. But of the four jurors that were removed, the state, the prosecutor asked no questions to three of them and asked very, very simple questions to the fourth, I think was what their children did for a living. The state asked more substantial questions to many of the other jurors that they did not exercise contrary challenges on. This issue was raised at the time by Portia's counsel, saying that there was a Batson issue. There was a first stage hearing, a prima facie hearing held by the court, and the court found that Portia had not made a prima facie showing of discrimination that these two African American jurors were removed. I think based on the case law that I think Portia made that prima facie shot. It's a very low threshold. So we have the state here using 50 percent of its peremptory challenges to remove 67 percent of the African American jurors, who only comprised, and this is a math mistake I made. I put 9 percent in my brief. They actually were 13 percent of the veneer. They represented three of the 23 jurors that made it onto the veneer. So a disproportionate percentage of African American jurors were removed, and based, again, on the case law, one of the things that this court considers disproportionate questioning. Now, the cases that talk about disproportionate questioning are the reverse, where the prosecutor is asking many, many questions to the minority jurors before they're removed. But I think disproportionate questioning can go the other way, is that you're not asking any questions at all to the African American jurors that you're removing, or very limited questions in a disproportionate way to the non-minorities that are on the jury. Does the record show how much information the parties get, the attorneys get, jurors? Some counties have a questionnaire that they supply, and other counties just give a card with basic information, name, occupation, age. It does not appear. I'm trying to remember how extensive of what the information they had before. I think there may have been some questions from the court that they at least had some general knowledge of the person's obviously name, maybe age, maybe place of employment. The court did. Is it possible that they were excused based on the information that was provided? It's very possible that the prosecutor had non-discriminatory grounds to dismiss these jurors based on a questionnaire. Prior record. Prior record, based on how they were looking in court. I mean, the facial, I mean, there's a lot of reasons that a prosecutor could get rid of a person for non-discriminatory reasons. And when you say how they were looking in court, you mean whether they were not paying attention? Correct. Rolling their eyes. But at the first stage, it just has to be a prime facial showing by defense. Then it would move to the second stage where the prosecutor would give those reasons. The prosecutor didn't give any reasons here. In fact, the prosecutor said, before I give my reasons as to why I removed these jurors, defense counsel hasn't even met the prime facial showing. So the remedy that we're asking for here is what the case law says, is that it's not a reversal of her conviction if the court agrees with this issue. It's that it's a remand for a second stage Batson hearing. For the state to show that, or to say that Portia met her first stage showing, and now the state needs to offer what were the non-discriminatory reasons possible that they removed those jurors. And if the court obviously finds that that's sufficient, then that would be the end of the inquiry. We're moving on to... Now, the court was involved in making an inquiry with regard to the jurors, right? Correct. Correct. The court opened up questioning to the jurors, asking some basic background questions, I believe, of do you know police officers or related to police officers? Had you been in jury service before? Did the court specifically ask the particular jurors questions at any other time? The court, if I recall, would ask a general question, you know, hands up, and then do specific inquiries, I guess. And so the court made those kinds of inquiries, right? Yes. Yes. And the court elicited information that you would normally want to know if you're going to pick a person or you're going to bump a person. I agree. Yes. Yes. Yes. But I think, again, what we have to look at is the first stage, Batson, is just a prima facie showing based on who was removed. So here we have 67 percent of the African-Americans and only 50 percent representing half of the country challenges of the state were removed. I think that the court should have, in the era that occurred, is that found the defense counsel made that prima facie showing and then moved it to the second stage. That's the reason I'm asking that is that there is no challenge that the denier was improperly, I mean, the whole group of jurors that were called in that day for that trial. There was some impropriety in the way the group was selected. No, there were three African-American jurors that made it into the veneer denier. And there was a fourth that had not. So of the 25 jurors, I believe it was two did not. Four were African-American. But I think that, again, that the first stage would be she made the prima facie showing and should have been moved to the second stage. And that's the remedy we're asking for. If this court does not agree with the ultimate remedy, remedies under arguments one and two. Obviously, what we have not discussed is the other two issues, the fitness issue and the sentencing issue. If a conviction is reversed outright, the sentencing issue would be moved. And also with the fitness issue as well, because there would not be a need for a new trial. So what we would ask for, Your Honors, is that this court grant ultimate relief and reverse Portia's conviction for aggravated criminal sexual assault outright. Under the first argument or under the second argument to remand for further proceedings in the juvenile court. A re-sentence in the juvenile court unless she has attained the age of 21 at that point. And then again to reverse her conviction outright and to end the matters in the juvenile court. Any other questions, Your Honors? I believe so. Thank you, Your Honors. Thank you, Mr. Rosanoff. Mr. Nicolosi? Thank you. Good morning, Your Honors. May it please the court, counsel. Your Honors, the state submits that the evidence presented was sufficient to prove the defendant guilty of aggravated criminal sexual assault beyond a reasonable doubt. Admittedly, the evidence, first off, the state, as I conceded in our brief, Mr. Wozniak's analysis of the interplay between the juvenile court and the adult criminal court is accurate. And the state chose to charge the defendant as it did. And by doing so, limited to its ability to prove the defendant guilty of this charge to the period of time when she was 16 years old. The state submits, again, it has to acknowledge that the evidence wasn't overwhelming. But again, this was a case that was tried by a jury. This is not a retrial. The jury was in the best position to consider the evidence presented, to weigh, consider credibility and weigh that evidence. And the state submits that any rational trier fact could have found the defendant guilty. But the instructions that were given to the jury didn't tell them specifically that she needed to be age 16. That's correct. That's true. But what the instructions did, I'm sorry, did I cut you off? No. It did say that she had to be 17 years younger. Yes. So the problem, I guess, that I see is that there was a lot of evidence presented that was not charged. Yes. And there was more indicia of corroboration about things that happened when they were younger. Sure. So this jury has no idea that it's limited to January 1, age 16, but during the year 2016, January 1 to October 22. It has no idea. So it's considering all of this evidence that has come in with no instruction that it shouldn't do so. So how were we to find that this jury didn't convict based on something that had happened prior to January 1, 2016? Your Honor, as I argued in my brief, I think you have to look at the totality of how the state presented its case to the jury. In opening statements and during the trial, during its questioning of the witnesses and during closing arguments, it focused, I would argue, pretty extensively and pretty strenuously on the specific, most recent sexual act between the defendant and the defendant. And that might not have allowed either because she had turned 17. Well, Your Honor, the state argues that she was still 16 at that point. At Christmas? Well, that was the defendant's statement during a video, but the state points to the minor's testimony that it was hot outside. It was in the middle of the school year, at Christmas break, and that it was hot. Well, he didn't say it was at Christmas break. The defense counsel, again, all I can do is argue the facts as I have them, and I argued in my brief that it was the defense counsel who suggested that it was December or January because the minor had used the phrase middle. And defense counsel said, do you mean December or January? The minor agreed with that statement. But again, as I argued in my brief, this was a 9-year-old boy when he testified. He was 8 years old when this crime happened. Clearly he had been the victim of an unspeakable number of terrible acts. He was in open court. He was testifying as to these humiliating events that happened to him. I would argue it's just not set in stone that it was in December or January, that the jury, again, was the finder of fact. It got to consider this young boy's testimony and his demeanor, his behavior. It found that the state had proved the charge beyond a reasonable doubt based on him saying it was hot out. And all of that could have, I guess, all this question could have been avoided had the choice of venue, so to speak, not come into play so much. I mean, this is something that, you know, by choice, the parameters for when this could have occurred had to be very narrow. The state did pigeonhole itself a little bit, yes. It could have charged her as a juvenile or as having committed the crimes when she was over 17 or when she had reached 17. I can't debate any of that. I definitely understand. I understand the difficulties of this record. I mean, I'm wondering, isn't it problematic that the charge, the way this was charged, was very specific, and yet the kitchen sink was thrown. Maybe I shouldn't use that saying this is a horrible crime. But everything's thrown into the mix that the jury's considering. The instructions aren't the greatest because look at the instructions in this case that the jury was given. They're not the greatest about pinpointing, you know, with some specificity, you know, that should be the way that normally you see that in criminal cases. And so you've got all this matter thrown into the jury's evidence box. The instructions aren't really absolutely clear. And as you phrased it, this was an overwhelming case, which is an interesting phraseology given the proof has to be beyond reasonable doubt. But nonetheless, you've got all these different things. And so how are we to know when we're judging this case on appeal that the person was convicted on what the state was focusing, laser focusing, without laser presentment of evidence, without laser, you know, presentment of anything else, that the person wasn't convicted of other bad acts? I mean, I find it interesting because of the, for example, it's not an exact analogy, but if a person was charged with burglary, but they thought this is a guy who burglarized everybody up and down the block, okay, but they only charged the person with one burglary. And sometimes they can put that other evidence in as modus operandi. Are there other exceptions to those rules? But normally other bad acts are not in evidence, right? As an evidentiary rule, you can't bring those things in unless you have one of these exceptions to the rule, like modus operandi is an example. Where is it here? I mean, here it's not there. We don't have that in the record. I mean, this is sort of problematic, isn't it? I mean, you're faced, as you say, so you're faced with the record that they brought you. You can't change that record. You're stuck with it. I'm stuck with it. But it's a problematic record for you. Yeah, I don't think oftentimes or maybe not prosecutors maybe don't always consider the record on appeal and how it's going to be presented and how it's going to be handled by the appellate prosecutors. But I understand they have a job to do it. Their job is very difficult. But after all the dust settles, yeah, I have the record I have. And all I can basically point to is here that the jury heard the evidence that the prosecutor did, in a way, direct the jury to consider only the recent act that occurred. So in that respect, I would argue that because the jury was focused on the most recent event, it wasn't considering the earlier events that were discussed in the video and the testimony and things like that. So I think the prosecutor did an okay job of trying to kind of push those to the side. Well, if the prosecutors want to present it all that other stuff. No question about it. And like I say, in the normal course of events and other criminal charges, there'd be a lot of debates about whether or not this other evidence of the non-charged evidence should have been allowed to be in the evidence or not. There's debates about the evidence rules and so forth. We don't really, you know, here we just have it all going into the mix and whether or not the person was found guilty of really what the prosecutor wanted the person to be found guilty of or was the person found guilty of all this other stuff. Following up on Justice Carter's question, it is somewhat ironic that all this other cracks evidence came in without objection. But it is that other evidence that is formulating the basis for this appeal in that we don't know what the jury focused on. So my question is, normally I know the record better than this, but how did the state prove age in this case? It proved age kind of in the way that I argued my brief that using the minor's statements that he was in school in third grade when he was eight years old and it was hot out. Not the minor's age, but the defendant's age. I'm sorry. I'm very sorry. Okay, that's how. So, yeah. I'll tell you what I'm familiar with. In the way that went, what I used to expect is a birth certificate, an easy way to prove the age of the defendant. Is there a birth certificate in this record? I don't think there's a birth certificate, but I thought it was pretty much assumed or stipulated to for lack of a better word that her birthday was October 22nd. And then at October 22nd of 2016, she was turning 16. I took that as. I believe so. Maybe Mr. Wozniak during rebuttal can have confirmation of that, but I didn't question that for a second, and I'm assuming I saw that somewhere in the record. Because the reason for my question, I know I seem like I'm coming out of left field sometimes, but the reason for my question is I wanted to know, is there any evidence she was 16 during this course of time? So, I'll look at the record of Mr. Wozniak and educate you. Yeah, sorry, I don't have a firm answer for you. So, that's how they proved it. Because while. So, if they knew that she turned 16 in October of 2016, then it had that window. And if this minor said he started school in, I guess we assume he started school in August of 2016. So, basically, you had two months before she turned 16 or turned 17 and took herself out of the ability to be charged as she was charged. So, the state would just submit that the jury heard the evidence and that any rational trifecta could have found. So, the jury heard the evidence that there was a narrow window when she was 16? I mean, I. Is that fair to say? Yes, it wasn't pointed out that they had a narrow window with which to find her guilty, but I guess we have to assume that the jury knew what the defendant was charged with and was listening to the evidence and considering all possible considerations. I think we can assume that the jury was doing that. Which I follow up on Justice O'Brien's question. Normally, the jury doesn't see the charging instrument in it, but they learn the elements of the offense from the issues instruction. Yes. So, this ties also back into her question that there's a problem with the issues instruction. I understand and I acknowledge the record as it is. So, the state would submit that this court affirms the defendant's conviction. If there are any other questions on any other issues, I'd be happy to answer those. Thank you, Mr. Gillespie. Mr. Wozniak for rebuttal. Justice Wright, in doing my brief, Portia, during her testimony, explicitly stated that her birthday was October 22, 1999. Oh, that's probably good. I appreciate that. Yes. I believe it's page 207 of the record. Whether I don't recall the state or any other witnesses stating her exact birthday during their case in chief, but I know that she specifically gave her birthday in her testimony. And, Justice Carter, you indicated the issues with all of this other conduct that's come in. What we don't have in the record is why defense counsel didn't object to this as being other crimes evidence. What was the rationale? Maybe because the defense was, Portia testified that her entire statement that she made to police was false, is what her testimony was. Possibly it was the defense counsel's theories to bring in more of her statements so that the jury would have a better concept of what she was saying to show that her statement was false. Maybe it was just to simply confuse the jury as to what was going on. But then that has the effect of creating the ineffective assistance of counsels to make sure that the jury is specifically instructed that they need to find that she's 16 when this offense occurs. Well, it's up to the traffic to make sure the jury is properly instructed. Correct. I'm sorry. It's the only time that people come in with instructions and they miss something because they're busy. Correct. Correct. So the ultimate fault is on the traffic. Correct. That's correct, Justice. And the number 17 kind of jumps out at me when I look at the issue's instruction. It doesn't seem like 16 was ever an issue they were asked to debate during the hearing. Yeah, and if you look at some of the comments by the prosecutor during the opening statements, the prosecutor says, and the judge did read the charging instrument to the jury, but then the jury is also instructed later on that the charging instrument is not evidence. The judge told you we charged it in a range over the whole span of 2016. That's not because there was one incident and we can't just figure out what day it happened. It's been going on consistently for most of this young child's life leading up to 2016. And then the evidence you'll see tomorrow that this conduct had in fact happened in 2016. During the state's closing, the prosecutor said, but this has been going on for a long time and it was going on all over 2016 at the latest, finally stopping in that year, or at least that was the last time it did happen. Then going over the elements of the offense, some of the propositions have to do with the age of the victim, the age of the defendant. That really hasn't been in dispute, is what the prosecutor said in closing. And then in rebuttal, as I said, you'll get those instructions, but you'll see that this lady has been doing what she did do at least all of 2016, is commit an act of aggravated criminal sexual assault. And then ask the jury to find her guilty of that offense. So the evidence at trial was focused on this last event that occurred, and there was all these other acts that were brought in. And you can see in the state's opening, closing, rebuttal, that that's what they're focusing on, but they keep mentioning things that occurred before. And then they say that age is not in dispute, which obviously it is here. And had the state charged her with predatory criminal sexual assault of a child, properly started it in juvenile court, this evidence would have proven her guilty beyond a reasonable doubt because it was her statement, C.P.'s statement, that corresponded with each other, that last act. But the proof is that it happened when she's 17. And when then the essential elements of the state need to prove them, based on the one charge that they chose that put Mr. Nicolosi in this unfortunate position to argue the record as it is, is that it needs to prove that she was under 17. And the state failed to prove that on the one charge and the one act, and based on the charging document. Are there any other questions, Your Honors? Again, we ask that this court reverse Portia's conviction outright for aggravated criminal sexual assault. Thank you. Thank you both for your arguments here today. This matter will be taken under advisement and a written decision will be issued to you as soon as possible. And with that, we will take a recess until 1.15.